Opinion delivered June 25, 1886.

[No. 3986.]

## John McElmurray v. The State.

1. THEFT—WILFULLY DRIVING STOCK, ETC.—Conviction for wilfully driving stock from its accustomed range can be had, in this State, under an indictment charging the theft of the stock.
2. SAME.—An accused may be tried for wilfully driving stock, under the provisions of Article 749 of the Penal Code, in any county into or through which the stock is driven.
3. SAME—FORMER JEOPARDY.—In as much as a conviction for wilfully driving stock from its accustomed range, etc., can be had under an indictment charging the theft of the stock, it is no objection to the sufficiency of a plea of former jeopardy interposed upon the trial for the wilful driving of the stock, etc , that the indictment under which the former trial was had, charged the theft of the stock. See the opinion *in extenso* on the question, and note the same for a plea of former jeopardy *held* sufficient to raise the issue; wherefore the ruling of the trial court, sustaining the State's exceptions to the same, was error.

APPEAL from the District Court of Uvalde. Tried below before H. W. Dillard, Esq., Special Judge.

The conviction in this case was for wilfully driving from its accustomed range, etc., one certain horse, the property of Sam. M. Evans, in Uvalde county, Texas, on the twentieth day of December, 1885. The penalty assessed against the appellant was a term of two years in the penitentiary.

Sam M. Evans was the first witness for the State. He testified that in December, 1885, he lived on Live Oak creek, which was a tributary of the Nueces river. Witness supposed that his said place was in Uvalde county. He bought it as a part of the territory of Uvalde county, through the county surveyor, and had three times rendered it for taxation, and twice paid taxes on it as part of Uvalde county. From that place witness moved to his present residence in Brackett, Kinney county, Texas. on the thirteenth day of February, 1886. Witness had possession of some horses on his said place in Uvalde county, Texas, in December, 1885, one of which, during that month, was taken from his possession by the defendant, without his consent. The horses referred to strayed to witness's house in July or August, 1884. Witness posted them in Brackett, Kinney county, publishing the notice in the Brackett *News*. On the morning of July 21, 1885, the defendant rode up to the witness's house, and called him out. Witness invited him to dismount and come in. He replied that he did not have time, but had a letter he wanted to show the witness. That letter, as well as witness could recall the contents to mind, read about as follows:

"DECEMBER 7.
"*Mr. John McElmurray:*
"DEAR FRIEND AND SIR:—Go see Mr. Evans, get them horses and fetch them to me, and I will pay you well for your trouble. I am going to start in a few days to Baylor. I want you to come and go with me, and I will pay you good wages. Be sure and fetch them horses for I am scarce of saddle horses.
"W. T. BEARD."

Witness handed the letter back to the defendant, declining to recognize it as a legal document, and refusing to deliver the horses on it. Defendant thereupon straightened himself up in his saddle, and said: "By G–d, sir, I came after my horses, and

I am going to have them." Witness replied that he could not get them with his, witness's, consent, unless he produced other and ample authority. Defendant remarked in reply: "I will take them all the same," and asked witness where they were. Witness replied that he had not seen one of them for several days, and that he had but a short time before turned the other out of the lot, and he had gone off in a direction which the witness indicated. Defendant then asked J. N. (Newt.) Edwards, who was present, if he knew where the horses were. Edwards indicated the direction of a point where he had recently seen the bay horse. Defendant then asked Edwards if he would go with him to get the horse. Edwards declined, saying that he would have nothing to do with the matter. The defendant said: "Well, by G d, I will get them, all the same." Witness turned to Edwards and told him to bear witness to the fact that he, witness, forbade the defendant taking the horse. Witness then told defendant that he would not get far with the horse if he took it. Defendant rode off in the direction indicated by the witness and Edwards, and soon returned, driving the bay horse. He caught the animal in the corner of the fence and led him out of the gate. He then rested his Winchester rifle, which he had kept in the scabbard, against a cedar tree, and changed his saddle from the horse he was riding to the bay horse, and rode the bay horse off, leading the one he rode to the witness's house. The witness next saw the defendant near Yancey's ranch, in the custody of deputy sheriff James. James arrested him on a warrant issued upon a complaint filed by the witness. The witness recovered the horse through Mr. James. He, witness, retained possession of that horse until about eight days before this trial, when J. B. Johnson claimed the horse, and filed the necessary affidavit of ownership, and the witness delivered the horse to Johnson.

Cross-examined, the witness testified that the horses came to his place in July, 1885, and were advertised by him two or three days after their appearance. Witness kept and used them as he did his own horses. After the arrest of the defendant, witness went to Brackett and posted the horses. He wrote notices, and gave them to the county clerk. Witness went to Brackett, Kinney county, to post the horses, and to make complaint against the defendant, because Brackett was his trading point. Witness had possession of, but no title to, the horses, prior to the posting of them. Witness could not remember whether or not he made oath, when he estrayed the horses, that he lived in Kinney

county. Witness did no jury service during his residence on his Live Oak creek ranch. He was summoned to do such service at the last term of the Kinney county district court, but the judge, because he did not think it beyond dispute that witness was a competent juror in Kinney county, excused him. The first time witness saw the defendant, which was before the horse was taken by him, was at Mr. Yancey's ranch, about four miles from witness's place. He told witness then that he had, or expected to get, authority to get the horses. Witness replied that he would willingly surrender them on proper authority. Witness had once before, in the district court of Kinney county, testified against the defendant in relation to this transaction. Defendant was then on trial for theft of the horse. Three horses came to the witness's house in the first instance. Johnson proved and recovered two of them, and the other died in harness. Witness could not say whether or not he killed the said horse. When witness told defendant, when he took the horse, that he would not get far with him, defendant replied: "Well, by G-d, the only way you can get me loose from him is to shoot me loose."

J. N. Edwards testified, for the State, that he was at the house of the witness Evans in December, 1885, when the defendant came to that house and got the horse in question. Defendant rode up to Evans's fence, in front of the house, and called: "Hello!" Evans went to the door and invited him to get down and come in. Defendant replied: "No, I haven't time; here is a little note you can read this morning." Mr. Evans read the note, handed it back to defendant, and said: "Mr. McElmurray, you can not get the horses on that note." Defendant straightened himself in his saddle and replied: "I have come after my horses, and I am going to have them; and the only way you have to keep me from taking them will be to shoot me loose from them." Defendant then rode off towards the foot of the hill where witness and Evans told him the bay horse was. As he started, Evans said to him: "I forbid you taking that horse," and called upon witness to note his protest. Evans then said to defendant: "If you take those horses you will not get far with them." Within the next five or ten minutes the defendant drove the bay horse to Evans's house. That animal, instead of going in to the corral, ran down the fence to a spring. Defendant dismounted at the corner of Evans's house, with his rope and gun. He then caught the horse, rested his gun against a cedar tree, changed the saddle to the bay horse, and rode off, leading the horse he rode

to Evans's house. Defendant asked witness to go with him in search of the horses, which witness refused to do, but witness helped defendant catch the horse after he was driven up.

Cross-examined, witness said that it was the practice of some cow boys, when changing saddle from one horse to another, to remove their guns from the scabbard. Others would make the change without removing the gun. Evans was angry throughout his interview with the defendant. Defendant, after the horse was caught, told witness to call Evans to see him "tie on" to the horse. Witness testified against the defendant substantially as he has testified on this stand, on his trial for theft of this horse, in the district court of Kinney county.

Deputy sheriff J. T. James testified, for the State, that on or about the twenty-first day of December, 1885, a warrant for the arrest of the defendant was delivered to him by the justice of the peace of precinct No. 1 of Kinney county, Texas. Witness arrested the defendant, the next day, on the Nueces, turned the horse over to Mr. Evans, and took the defendant before the justice of the peace. Supecting that the defendant had written the power of attorney to take the horses, which, on his arrest, he showed the witness, witness got the justice of the peace to require him to write his name. It was the opinion of the witness, based upon a comparison of the signature of the defendant with his name as it appears in the power of attorney, that the defendant wrote the said power of attorney himself.

Cross-examined, witness said that he arrested the defendant at Yancey's ranch, which was in Kinney county. The witness could not and would not have executed the warrant outside of Kinney county. Witness did not closely observe the note or power of attorney exhibited by the defendant, and did not remember the name signed to it. He was not an expert penman.

J. B. Johnson testified, for the State, that the two horses he recovered from Sam Evans belonged to Charles McDowell. They were branded at witness's pen. McDowell left witness's ranch in April, 1884. He wrote witness first from Uvalde, again from the Pecos, and a third time from San Angelo. In one of these letters McDowell enclosed the witness a power of attorney to take possession of five certain horses, which, he said, got away from him. That power of attorney authorized witness to take possession of any of McDowell's horses wherever he could find them. That instrument was now mislaid. The horse in

question was well known to witness, and belonged to Charles McDowell.

Cross-examined, the witness said that he now lived at Leaky, in Bandera county, was a practicing attorney, and was aiding in the prosecution of this case. Witness proved the horses from Evans before the indictment in this case was found. He could not say that McDowell had not sold the horse in question, but he had not sold it when he last wrote to witness. McDowell, who was now living some where in Colorado, bought the horse from R. H. Cummings.

W. B. Burdett testified, for the State, that he knew the horse in question to be one bought by McDowell from R. H. Cummings about two years before this trial. He did not know who owned the said horse now. The said R. H. Cummings identified the horse in question as one he sold McDowell, about two years before this trial. The State closed.

W. N. Edwards testified, for the defense, that he had known the defendant since November, 1885, when he came to witness's ranch, asking directions to Yancey's ranch. Witness had several conversations with the defendant after that; and shortly before he took the horse involved in this prosecution he, defendant, told the witness that he was then expecting a letter authorizing him to take possession of the horses then in the possession of Evans. On a day subsequent to the last mentioned conversation, the defendant brought some mail to the witness's ranch, looked much pleased himself, and said that he had received the letter authorizing him to take the horses. Witness asked him to read the letter, which he did. Witness could not remember the words of the letter, but its purport was to take charge of the two horses, and recover the value of the dead horse from Evans, or prosecute him for its conversion. Defendant requested witness to keep his horse for him until he could take the two horses to their owner. Witness declined, upon the ground that he had corn sufficient only to feed his own horse stock, and advised him to arrange with Yancey for the care of his horse. Witness's post office was Good Luck, about seven miles from his house. Witness knew no such person as W. T. Beard.

W. M. Yancey testified, for the defense, that he knew defendant and his father in Erath county, Texas, about seven years before this trial. Defendant came to witness's ranch, in Kinney county, in November, 1885, and remained on that ranch until he was arrested for this offense. On his return from the post office

one evening, the defendant said that he had received a letter authorizing him to take possession of the horses then in Evans's possession, and that he was going after the horses early on the next morning. He asked if witness would take care of his horse while he was gone to take the said horses to their owner. Witness told him that his horse could run on the range with his, witness's, horses. Defendant left witness's ranch early on the next morning, and returned that evening with the bay horse. He reported that he could not find the other horse, but would go back to Evans's next day for him. James came and arrested him before morning, and turned the bay horse over to Evans. The witness had always understood that Evans's place was in Uvalde county. Witness testified for this defendant in his trial in Kinney county for the theft of the horse in question.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

Hurt, Judge. The appellant was indicted in the district court of Uvalde county, for wilfully driving a horse from its accustomed range, with intent to defraud the owner thereof. When the cause was reached for trial, the defendant filed a plea of former jeopardy, which plea, upon exception by the State, was held bad. Upon a plea of not guilty he was then tried and convicted.

Did the facts alleged in the special plea, if proven, bar the prosecution? is the question presented.

In substance, this plea alleged that on the fourth day of March, 1886, he was indicted in the district court of Kinney county for the theft of this same horse; that on the ninth day of March, 1886, he was put upon trial in said court upon said indictment; that he entered a plea of not guilty to the indictment; that a jury was impaneled and sworn; that the cause was submitted to the jury by the introduction of the evidence; that then, after the evidence was all in, and after the State, by the district attorney, and the defendant, had rested the case as to the evidence, the court, over objection and exception by the defendant, on motion of the district attorney, discharged the jury. The plea further alleges that the court had jurisdiction of the cause, and that the theft charged by the indictment in Kinney

county, and the offense for which he was held to answer in the case before the court, were identical.

Made a part of this plea is a properly authenticated transcript of the record in the case from the Kinney county district court, which sets out the indictment there presented. It is in the ordinary form for horse theft, and alleges the horse to be the property of Evans, the prosecutor and alleged owner in the case at bar. There is also set out the order or judgment of the district court of Kinney county, which, after reciting that the indictment was read, and the plea entered, recites that "the evidence disclosing the fact that the offense was committed in Uvalde county, it is ordered by the court that the jury be discharged."

Now, under the decisions of this court, a defendant may be convicted of driving from the range, under Article 749, on an indictment for theft under Article 746 (to which doctrine, however, the writer does not subscribe), and under the decision in Shubert's case, 20 Texas Court of Appeals, 320, a defendant may be legally tried and convicted for violating the provisions of Article 749 in any county in to which the animals are driven or brought. This being so, it was no valid objection to the plea in this case that the one indictment charged theft and the other driving, because under charge of the one a conviction could be had for the other offense. Nor would the fact that the animal was driven from its range, which range was in Uvalde county, prevent a prosecution in any other county in to or through which it was brought by the defendant. The question of the jurisdiction of the district court of Kinney county is thus narrowed to the single question of fact: Did the defendant drive, or bring in to that county, the animal, after driving it from its accustomed range in Uvalde county, before the indictment for the theft was presented? If so, the court had jurisdiction of the offense, and the defendant was in jeopardy.

Upon this question of fact, the evidence in the statement of facts in the case at bar is conclusive. The horse was taken from the prosecutor in December, 1885, and soon afterwards the defendant was arrested in Kinney county with the horse in his possession. The indictment for theft in the latter county was presented, as we have seen, in March following.

The defendant should have been allowed to stand upon his plea. The judgment is reversed and the cause remanded.

*Reversed and remanded.*